# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

September 2, 2016

*Via ECF*
The Honorable Barbara C. Moses
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Jose Leonel Hernandez, et al. v. El Nuevo Bohio, Inc., et al.*
    <u>Docket No.: 14-cv-652 (BCM)</u>

Dear Judge Moses:

  We represent the Plaintiffs, Jose Leonel Hernandez ("Plaintiff Hernandez") and Yudelka Garcia ("Plaintiff Garcia"), (collectively as "Plaintiffs"), in the above-referenced wage and hour case brought pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA"), against 791 Bohio Restaurant Inc., El Bohio Tremont Restaurant, Corp., Tremont Restaurant Corp., and Ramon Fernandez (collectively as "Defendants"). We submit this letter, on behalf of all parties, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims,[1] a copy of which is attached hereto as **Exhibit A**.[2] As explained in further detail below, the parties respectfully submit that the proposed settlement agreement is fair and reasonable.

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiffs' non-FLSA claims as there is no requirement for them to do so.

[2] Exhibit A is a copy of the settlement agreement to be signed by the parties upon the Court's approval. Upon approval, the parties will execute a copy of the settlement agreement and submit a stipulation of dismissal to the Court.

I.      **Preliminary Statement**

On January 31, 2014, Plaintiffs commenced this wage and hour matter against Defendants. D.E. 2. On April 29, 2014, Plaintiffs filed their Amended Complaint. D.E. 18. On June 16, 2014, Plaintiffs filed their Second Amended Complaint alleging, *inter alia*, that Defendants failed to pay them minimum wage and overtime compensation in violation of the FLSA. D.E. 32.

From July 2014 through November 2015, the parties engaged in substantial discovery, including exchanging relevant documents, responses to interrogatories, and conducting depositions of the parties. On February 22, 2016, District Judge Vernon S. Broderick referred this matter to Your Honor to conduct a settlement conference. On April 25, 2016, the parties attended a settlement conference before Your Honor and agreed, at the Court's recommendation, to settle the matter for a total of $68,000.00, to be paid in twelve monthly installments. The settlement agreement specifies that the first payment in the amount of $10,000.00 shall be issued by the later of fourteen days after the execution of the settlement agreement or ten days after its approval by Your Honor. Further, the settlement agreement provides that all subsequent payments, in the amount of $5,500.00 per month for the next six payments and $5,000.00 per month for the remaining five payments, must be made on or before the first day of each calendar month thereafter. In the event that Defendants default on their obligations, Plaintiffs are entitled to recover from Defendants twice the amount of the outstanding balance due if Defendants fail to cure their default within ten days after receipt of a notice to cure. Of the total amount, Plaintiff Hernandez will receive $27,246.04, Plaintiff Garcia will receive $12,431.96, and Plaintiffs' counsel will receive $28,322.00, of which $22,666.66, or 1/3 of the total settlement amount, represents attorneys' fees, while $5,655.34 represents reimbursement for counsel's out-of-pocket costs and expenses spent prosecuting this matter of Plaintiffs' behalf.

II.     **The Agreement is Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the

2

settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

Here, Defendants are a restaurant located in the Bronx, New York and its owner. The three corporate Defendants sued herein are successive corporate iterations of the same restaurant owned by Defendant Fernandez. Plaintiff Hernandez asserts that Defendants employed him as a counterperson from in or about February 2008 through October 4, 2013. Because Hernandez commenced this case on January 31, 2014, the relevant statutory period with respect to his FLSA claims, assuming he could prove that Defendants' willfully violated the FLSA, is January 31, 2011 to October 4, 2013. During his employment generally, and specifically during the relevant FLSA period, Hernandez states that he was responsible for providing service to take out customers. Hernandez claims that he worked between five and six days per week, from 11:00 a.m. to 8:30 p.m. each workday, with a thirty minute meal break, for a total of approximately forty-five to fifty-four hours per week. For this work during the relevant FLSA period, Hernandez asserts that Defendants paid him $350.00 per week from January 31, 2011 through in or about March 2013 and $375.00 per week from April 2013 until his termination. Although he worked more than forty hours per week, Hernandez contends that Defendants never paid him overtime compensation for hours worked over forty per week at time and one-half his regular rate and that he received regular hourly wages below the minimum wage.

Defendants employed Plaintiff Garcia as a waitress from in or about July 2012 through October 4, 2013. Thus, the entire duration of Garcia's employment is covered by the FLSA. Garcia claims that she worked between five and six days per week. She alleges that she worked from 11:00 a.m. to 8:30 p.m. each workday, with a thirty minute meal break, for a total of approximately forty-five to fifty-four hours per week. For this work, Plaintiff Garcia asserts that Defendants paid her $270.00 per week from July 2012 through in or about May 2013 and $300.00 per week from in or about June 2013 until her termination. Although she worked more than forty hours per week, Garcia contends that Defendants never paid her overtime compensation for hours over forty per week at time and one-half her regular rate and that she received regular hourly wages below the minimum wage.

While both Plaintiffs received tips, they allege that Defendants did not provide proper notice of the tip credit under the FLSA. Plaintiffs contend that Defendants paid them both in cash.

Defendants deny all of Plaintiffs' claims and maintain that they paid Plaintiffs all wages required under the FLSA. Moreover, Defendants contend that they are entitled to the benefits of a tip credit and meal credit under the FLSA, which could limit Plaintiffs' claims and potentially defeat their minimum wage claims entirely. Defendants further assert that Plaintiffs are not entitled to liquidated damages as they acted in good faith at all times and that they did not act willfully. Finally, Defendants contend that they are not covered by the FLSA as their gross annual sales did not exceed $500,000.00 and neither the Defendants nor the Plaintiffs were engaged in interstate commerce. *See* 29 U.S.C. § 203(r)(1)(i)-(ii); 29 U.S.C. § 206(a); 29 U.S.C. § 207(a).

Were the trier of fact to credit all of Plaintiffs' evidence and were the Court to adopt all of Plaintiffs' legal arguments, Plaintiff Hernandez's maximum potential recovery under the FLSA amounts to $23,129.34, consisting of actual unpaid wages in the amount of $11,564.67 and liquidated damages in the amount of $11,564.67. Plaintiff Garcia's maximum potential recovery under the FLSA amounts to $15,537.38, consisting of actual unpaid wages in the amount of $7,768.69 and liquidated damages in the amount of $7,768.69.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in costly motion practice litigating Plaintiffs' anticipated partial motion for summary judgment. Then, regardless of the resolution of that motion, the parties would still proceed to a trial in this matter, resulting in a months-long delay of the resolution of Plaintiffs' claims. Additionally, proceeding to trial in this matter would require Plaintiffs to bear the expense and inconvenience of returning to New York from their current residences in Missouri and Illinois. Finally, both parties face the risk of losing at trial, either in whole or in part. Indeed, were Hernandez to succeed on liability but not prove that Defendants willfully violated the FLSA, his maximum FLSA recovery would be $17,456.58. Even worse, if Defendants could prove that they made a good faith effort to comply with the statute, which would obviously mean that they did not willfully violate the statute, Hernandez's maximum FLSA recovery would be $8,728.29, while Garcia's would be $7,768.69. Additionally, if Defendants can prove that they are not subject to the FLSA, Plaintiffs would both recover nothing. Thus, Hernandez is receiving substantially more under his pro-rata share of the settlement amount, even after paying his counsel, than he could ever recover at trial with respect to his FLSA claims. Moreover, based on her pro-rata share of the settlement amount, even after paying her counsel, Garcia is receiving all of her unpaid wages and sixty percent of her liquidated damages under the FLSA.

Moreover, the settlement here was only reached *after* the parties engaged in substantial discovery, which was nearly complete, numerous attempts at negotiating a resolution over the course of the prior two years, and ultimately a settlement conference with Your Honor. At the settlement conference on April 25, 2016, Your Honor successfully assisted the parties in reaching a settlement in the amount of $68,000.00, based on the Court's recommendation, which the parties agreed to be a fair and reasonable settlement under the circumstances of the case, and which the Court obviously would not have recommended had it believed otherwise. Clearly, the settlement achieved reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues of the matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in paragraph 5 of the Settlement Agreement contains a mutual release of claims which, in the event that the plaintiffs are no longer

employed by the defendants as is the case here, have been approved in FLSA cases by courts in this District. *Chauca v. Abitino's Pizza 49th Street Corp.*, 2016 WL 2647603, at *1-2 (S.D.N.Y. June 29, 2016) (Moses, *J.*) (approving mutual general release in FLSA settlement); *Weng v. T&W Restaurant, Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (Moses, *J.*) (approving mutual general release in FLSA settlement, but denying approval of agreement for other reasons); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (Moses, *J.*) (same); *Lopez v. Poko-St. Ann L.P.*, --- F. Supp. 3d ----, 2016 WL 1319088, at *2-4 (Apr. 4, 2016) (Moses, *J.*) (citing *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015); and *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (denying settlement due to, *inter alia*, the general release being overly broad and not mutual, but holding that the release would be approved if revised to be mutual); *Lola*, 2016 WL 922223, at *2 (Sullivan, *J.*) (quoting *Souza,* 2015 WL 7271747, at *5) (approving settlement agreement with mutual releases and noting "mutual release of claims is acceptable because it 'will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes'"). Likewise, the agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Rest. Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC,* 2015 WL 1455689, at *5 (S.D.N.Y. Mar. 30, 2015)). With respect to the installment payments, Plaintiffs' settlement awards are protected by several provisions of the agreement. For example, in the event that Defendants default on their obligations, Plaintiffs are entitled to recover from Defendants twice the amount of the outstanding balance due if Defendants fail to cure their default within ten days after the receipt of a notice to cure. Moreover, the agreement limits the defenses available to Defendants during such a dispute and provides that the prevailing party is entitled to reasonable attorneys' fees and costs resulting from any related litigation over that dispute. Finally, the agreement provides that this Court will retain jurisdiction to permit prompt enforcement of the agreement.

### III. The Requested Attorneys' Fees and Costs are Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336).[3] When courts examine attorneys' fees awards in Rule 41 FLSA settlements

---

[3] Judge Pittman, however, recently found as follows: "I do not address the fee arrangement between plaintiff and their counsel because I do not believe I am required to do so under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and her employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract

5

it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $22,666.66, or 1/3 or the total settlement. This is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit in FLSA cases routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); *see also Cregg v. Firstservice Residential N.Y., Inc.*, Docket No.: 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon the success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of the fee award here is further solidified by "[a]pplying the lodestar method as a cross check." *Guaman v. AJNA-Bar NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar crosscheck, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).

Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400.00 per hour, Alexander T. Coleman, the Firm's senior counsel at the commencement of the action and partner since December 2015 who directly supervised the associate work on the litigation, would seek $350.00 per hour for his time spent on the case as a partner and $325.00 per hour for time spent before then, the Firm's associates would seek $150.00-$250.00 per hour, and the Firm would seek reimbursement for its paralegals at the rate of $100.00 per hour, which are well within the norms of this Circuit. Indeed, Courts in this

---

between a client and his attorney." *Barbecho v. M.A. Angeliades, Inc.*, 2016 WL 3524066, at *2 n.4 (S.D.N.Y. June 21, 2016).

District and the Eastern District of New York have routinely approved these same or similar rates in contested wage and hour cases. *See Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427 (S.D.N.Y. May 10, 2016) (Engelmayer, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 per hour for the Firm's associates, and between $75.00 per hour and $90.00 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, Docket No.: 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store, Co.*, Docket No.: 10-cv-5255 (ERK) (LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, Docket No.: 15-cv-527 (LGS) (JCF) (S.D.N.Y. Dec. 21, 2015) (Francis, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, Docket No.: 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for the Firm's associates, and $75.00 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75.00 per hour for the Firm's paralegals).

The Firm expended a total of 428.17 hours on this matter, as evidenced by counsel's contemporaneously-kept billing records, which are annexed hereto as **Exhibit B.** Accordingly, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, are $99,126.67.[4] Rather than continuing to litigate this matter, Plaintiffs' counsel believes that $22,666.66 in attorneys' fees - - or 1/3 of the settlement amount - - is a reasonable compromise to settle this matter in light of the risks applicable to the Plaintiffs' claims and the benefits to avoiding further delay of the resolution of Plaintiffs' claims.

With regard to costs, Plaintiffs' counsel has incurred $5,655.34 in out-of-pocket expenses prosecuting this case.[5] Thus, the $28,322.00 figure being paid to counsel from the settlement amount includes full compensation of these necessary expenses.

Lastly, with respect to the installment nature of the settlement, the firm is receiving reimbursement in the amount of $5,655.34 for its out-of-pocket expenses from the first installment payment. Plaintiffs are receiving a pro-rata share of the remainder of the first installment payment.

---

[4] This figure is based upon the lodestar calculation for work performed by Plaintiffs' counsel as of September 2, 2016.

[5] Attached hereto as **Exhibit C** is an expense report detailing the out-of-pocket expenses incurred by Plaintiffs' counsel while prosecuting this case. Plaintiffs' counsel will produce all available receipts for these expenses should the Court require.

7

For the subsequent eleven installment payments, this firm and the Plaintiffs each receive a pro-rata share of each monthly payment.

Accordingly, Plaintiffs' counsel requests a total of $28,322.00 for Plaintiffs' counsel's attorneys' fees and litigation expenses advanced on behalf of the Plaintiffs.

### IV. Conclusion

In light of the foregoing, the parties respectfully request that the Court approve their settlement and, subject to the submission of a stipulation of dismissal after the parties have executed the settlement agreement, dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. The parties submit a Proposed Consent Order as **Exhibit D**.

Dated: New York, New York
       September 2, 2016

Respectfully submitted,

| | |
|---|---|
| BORRELLI & ASSOCIATES, P.L.L.C. | THE LAW OFFICES OF MARTIN E. RESTITUYO, P.C. |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |
| 655 Third Avenue, Suite 1821 | 1345 Avenue of the Americas |
| New York, New York 10017 | 2nd Floor |
| Tel.: (212) 679-5000 | New York, New York 10105 |
| Fax: (212) 679-5005 | Tel.: (212) 729-7900 |
| | Fax: (212) 729-7490 |
| _____ | _____ |
| David D. Barnhorn, Esq. | Martin E. Restituyo, Esq. |